**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**PECOS DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| **v.** | § | **P:20-CR-287-DC** |
| | § | |
| **CECIL CLAY BROWN** | § | |

## ORDER DENYING MOTION TO SUPPRESS

BEFORE THE COURT is the Motion to Suppress filed by Defendant Cecil Clay Brown (Defendant). (Doc. 20). After due consideration of the evidence, the parties' arguments, and the relevant law, the Court **DENIES** Defendant's Motion to Suppress. *Id.*

### I. BACKGROUND

On July 9, 2020, a federal grand jury returned a three-count indictment charging Defendant with being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2), being an unlawful user of a controlled substance and knowingly possessing a firearm in violation of 18 U.S.C. §§ 922(g)(3), 924(a)(2), and knowingly possessing a stolen firearm in violation of 18 U.S.C. §§ 922(j), 924(a)(2). (Doc. 13). Defendant filed the instant Motion to Suppress on August 11, 2020. (Doc. 20). The Government requested and received an extension of time to file a response and filed a timely Response in opposition to the Motion to Suppress on August 31, 2020. (Doc. 24). The Court conducted an evidentiary hearing with respect to the Motion to Suppress on September 11, 2020. (*See* Doc. 30). Accordingly, this matter is ready for disposition.

### II. FACTS

At the suppression hearing the Government presented the testimony of Agent Asher Schuler and Officer Beatriz Diaz. Defendant presented the testimony of Johnny Terrazas and

Elizabeth Talano. Video recordings from Officer Diaz's patrol car and from Sergeant Xavier Ramon's patrol car and body camera were admitted into evidence.

In the early morning hours of May 26, 2020, Officer Diaz of the Monahans Police Department initiated a traffic stop of a 2013 Ford Fusion. The basis for the stop was that the vehicle's taillights were not operating. However, the vehicle's headlights and brake lights were functioning.

The Ford Fusion pulled over and stopped, and Officer Diaz approached the vehicle. She identified herself and explained that the basis of the stop was that the car was being driven without its lights. Defendant, the driver of the vehicle, stated that his lights were on. While speaking with Defendant, Office Diaz smelled the odor of burnt marijuana. She directed Defendant to step out of the car and radioed for assistance. Defendant exited the vehicle but ignored two orders to place his hands on the vehicle. Defendant fled the scene on foot. Officer Diaz pursued him on foot and ordered him to stop. Defendant continued to flee, and Officer Diaz again requested assistance.

Sergeant Ramon of the Monahans Police Department responded to Officer Diaz's requests for assistance and drove to the area. He observed Defendant attempting to enter a trailer home. He exited his vehicle and ordered Defendant to stop and to display his hands multiple times. Defendant did not comply. Sergeant Ramon fired his taser, but it did not strike Defendant. Defendant continued to ignore orders to show both his hands and resisted Sergeant Ramon's efforts to place him in handcuffs. Sergeant Ramon tased him, and Defendant ceased to struggle. After Defendant was handcuffed, Sergeant Ramon frisked Defendant and discovered a Kimber .45 caliber pistol in his pocket. Sergeant Ramon subsequently arrested Defendant.

After Defendant was arrested, Officer Diaz returned to her patrol car and the Ford Fusion. She searched the vehicle and discovered a Taurus PT 1911 .45 caliber pistol and suspected marijuana and methamphetamine.

At the suppression hearing, Officer Diaz testified that the taillights of the Ford Fusion were not operating when she observed the vehicle and initiated the traffic stop.

Mr. Terrazas, an investigator with the Office of the Federal Public Defender, testified that he disassembled and examined the taillights of the vehicle and found they appeared to be in working order. The taillights appeared to be unaltered since they were installed by the manufacturer. He also testified that the taillights came on automatically when the vehicle's headlights were operating.

Ms. Talano, the owner of the 2013 Ford Fusion, testified that she has not had any issues with the taillights not functioning properly. The vehicle has also passed its recent annual inspection required by Texas law.

### III. LEGAL STANDARD

The Fourth Amendment guarantees that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend IV. The Supreme Court has determined warrantless searches and seizures are per se unreasonable unless an exception to the warrant requirement is applicable. *See Katz v. United States*, 389 U.S. 347, 357 (1967).

Evidence that law enforcement officers obtain in violation of the Fourth Amendment is subject to suppression under the exclusionary rule. *United States v. Massi*, 761 F.3d 512, 520 (5th Cir. 2014). "[T]he exclusionary rule encompasses both the primary evidence obtained as a direct result of an illegal search or seizure and . . . evidence later discovered and found to be

derivative of an illegality, the so-called fruit of the poisonous tree." *Utah v. Strieff*, 579 U.S. ___, 136 S. Ct. 2056, 2061 (2016) (internal quotation marks omitted) (quoting *Segura v. United States*, 468 U.S. 796, 804 (1984)).

Ordinarily, a defendant bears the burden of proving by a preponderance of the evidence that the evidence at issue was obtained in violation of the Fourth Amendment. *United States v. Guerrero-Barajas*, 240 F.3d 428, 432 (5th Cir. 2001). However, when law enforcement officers conduct a search or seizure without a warrant, the government bears the burden of proving by a preponderance of the evidence that the search or seizure was constitutional. *United States v. McKinnon*, 681 F.3d 203, 207 (5th Cir. 2012).

## IV. DISCUSSION

Defendant contends Officer Diaz lacked reasonable suspicion or probable cause to stop his vehicle as the video shows the Ford Fusion complied with relevant Texas law. (Doc. 20 at 4–5). He argues that the stop was unconstitutional, and, therefore, the evidence found on his person and in the vehicle is subject to suppression. *Id.* at 5.

The Fifth Circuit "has treated routine traffic stops, whether justified by probable cause or a reasonable suspicion of a violation, as *Terry* stops." *United States v. Brigham*, 382 F.3d 500, 507 (5th Cir. 2004) (en banc). A *Terry* stop is a brief seizure that must be supported by reasonable suspicion, that is, "the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [the] intrusion." *Terry v. Ohio*, 392. U.S. 1, 21 (1968). In applying *Terry* to the context of a traffic stop, courts consider (1) whether the seizure was justified at the outset, and (2) whether the officer's actions were reasonably related to the circumstances that justified the stop or to dispelling reasonable suspicion developed during the stop. *See Brigham*, 382 F.3d at 506–07.

At issue in this case is the constitutional propriety of the initial seizure. An officer must have reasonable suspicion of criminal activity before conducting a *Terry* stop. *United States v. Cortez*, 449 U.S. 411, 417 (1981) ("An investigatory stop must be justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity."). Reasonable suspicion is based on the totality of the circumstances, and the requisite level of suspicion is more than a mere hunch but less than probable cause. *See Navarette v. California*, 572 U.S. 393, 397 (2014). "As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Whren v. United States*, 517 U.S. 806, 810 (1996).

Texas Transportation Code §547.322 requires that passenger cars have taillamps that "shall emit a red light plainly visible at a distance of 1,000 feet from the rear of the vehicle." Additionally, the taillamps "must emit a light when a headlamp or auxiliary driving lamp is lighted." Tex. Transp. Code § 547.322(g). An officer who observes a vehicle's defective taillights has probable cause to believe that a traffic violation is occurring, and the decision to stop the vehicle is reasonable under the Fourth Amendment. *United States v. Fleming*, 84 F. App'x 396, 396–97 (5th Cir. 2003); *see also Whren*, 517 U.S. at 810.

The video footage from Officer Diaz's dash camera was submitted as evidence. The Court has carefully reviewed the footage, and the video indicates that the taillights of the Ford Fusion were not functioning at the time in question. At the start of the video, the vehicle drives by Officer Diaz's patrol unit and it appears the taillights are dark. After Officer Diaz turns to follow the Ford Fusion, the taillights do not appear to be on, but are rather reflecting the light from the headlights of Officer Diaz's patrol unit. Additionally, Officer Diaz credibly testified that the vehicle's taillights were not operating.

Alternatively, if the taillights were functioning, the Court concludes that Officer Diaz's belief that they were not operating was an objectively reasonable mistake of fact. The video is the best evidence of what Officer Diaz observed at the time in question and it is not clear from the video that the taillights were operating. Indeed, Defendant admits that portions of the video look as if the taillights are not functioning. (*See* Doc. 20 at 2). Supreme Court case law is clear that the reasonableness requirement of the Fourth Amendment can be satisfied when mistakes are made so long as the mistakes are "those of reasonable men." *Illinois v. Rodriguez*, 497 U.S. 177, 186 (1990) (quoting *United States v. Brinegar*, 338 U.S. 160, 176 (1949)). Reasonable suspicion can rest "upon a mistake of law or fact [if] the mistake is objectively reasonable." *United States v. Alvarado-Zarza*, 782 F.3d 246, 249 (5th Cir. 2015).

The circumstances presented in this case are analogous to the facts the Tenth Circuit considered in *United States v. Bustillos-Munoz*. 235 F.3d 505, 506–07, 513 (10th Cir. 2000). In *Bustillos-Munoz*, a vehicle driving behind a patrol unit had headlights that shone brightly in the officer's rearview mirror. *Id.* at 506–07. The officer mistakenly concluded that the driver had failed to switch off his high beam headlights as required by Colorado law and initiated a traffic stop. *Id.* During the traffic stop, the officer determined that the driver had not been operating high beam headlights. *Id.* at 507. The Tenth Circuit concluded that the initiation of the traffic stop was constitutionally permissible, even though the officer was mistaken, because the officer had reasonable suspicion that a traffic violation occurred. *Id.* at 513.

Similarly, Officer Diaz had reasonable suspicion to believe the driver of the Ford Fusion had violated Texas Transportation Code § 547.322 based on her observations. The current record does not conclusively establish that Officer Diaz was mistaken, but if she was mistaken, the

record demonstrates that such a mistake was objectively reasonable and reasonable suspicion based on specific and articulable facts existed. *See Alvarado-Zarza*, 782 F.3d at 249.

Accordingly, the Court concludes the traffic stop was justified at the outset. As Defendant has raised no challenges to the subsequent actions of the officers, the Motion is denied.

## V. CONCLUSION

Based on the foregoing reasons, the Court **ORDERS** that Defendant's Motion to Suppress be **DENIED**. (Doc. 20).

It is so **ORDERED**.

SIGNED this 9th day of November, 2020.

_____

DAVID  COUNTS
UNITED STATES DISTRICT JUDGE